IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **OMAR GRAYSON,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. **09-335 - MJR-CJP** |
| ) | |
| **HAROLD SCHULER,** ) | |
| ) | |
| Defendant. ) | |

## REPORT and RECOMMENDATION

This Report and Recommendation is respectfully submitted to District Judge Michael J. Reagan pursuant to 28 U.S.C. §§636(b)(1)(B) and (C).

Plaintiff Omar Grayson is an inmate in the custody of the IDOC, currently incarcerated at Danville Correctional Center. He brings suit pursuant to 42 U.S.C. §1983 for violation of his constitutional rights. He alleges that defendant Schuler violated his First Amendment right to practice his religion by ordering his hair cut pursuant to the IDOC grooming policy in August, 2008.

Now before the Court are Defendant's Motion to Dismiss **(Doc. 14)** and Defendant's Motion for Summary Judgment **(Doc. 17)**. Both motions raise failure to exhaust and qualified immunity. Defendant makes the same arguments in both motions, but the motion for summary judgment is supported by exhibits attached to the memorandum in support, **Doc. 18.** Thus, the motion to dismiss is superseded by the motion for summary judgement, and this Report and Recommendation will be primarily directed to the motion for summary judgment.

## Standard for Summary Judgment

Summary judgment is appropriate under **Fed.R.Civ.P. 56** where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

1

any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." **Fed.R.Civ.P. 56(c); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986).** The evidence is construed in the light most favorable to the non-moving party and all justifiable inferences are drawn in favor of that party. **See,** *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 255, 106 S.Ct. 2505, 2513-14 (1986).** Once the moving party has produced evidence to show that he or she is entitled to summary judgment, the non-moving party must affirmatively demonstrate that a genuine issue of material fact remains for trial. ***Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996).**

In responding to a summary judgment motion, the non-moving party may not simply reiterate the allegations contained in the pleadings; more substantial evidence must be presented at this stage. Moreover, a genuine issue of material fact is not shown by the mere existence of "some alleged factual dispute between the parties," ***Anderson*, 477 U.S. at 247**, or by "some metaphysical doubt as to the material facts," ***Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).** Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." ***Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512.**

Plaintiff is a *pro se* inmate, and his pleadings must be liberally construed. ***Duncan v.Duckworth*, 644 F.2d 653, 655 (7th Cir.1981).**

### Failure to Exhaust Administrative Remedies

Plaintiff's claims are subject to the exhaustion requirement set forth in **42 U.S.C. § 1997e(a)** as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

*Perez v. Wisconsin Department of Corrections*, **182 F.3d 532 (7th Cir.1999)** explained that exhaustion of administrative remedies pursuant to 42 U.S.C. § 1997e(a), while not jurisdictional *per se*, is a "precondition" to suit, regardless of the apparent futility of pursuing an administrative remedy, regardless of whether money damages are sought as a tangential remedy, and regardless of notions of judicial economy. Exhaustion of administrative remedies is required *before* a case may be brought, even if exhaustion is accomplished during pendency of the case. *See* **42 U.S.C. § 1997e(a); and** *Perez*, **182 F.3d at 535-536.** The Supreme Court has held that the "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, **122 S.Ct. 983, 992 (2002)**.

Exhaustion must occur *before* suit is filed; plaintiff cannot file suit and then exhaust his administrative remedies while suit is pending. *Ford v. Johnson*, **362 F.3d 395, 398 (7th Cir. 2004).** Exhaustion requires that a prisoner "properly take each step within the administrative process." *Pozo v. McCaughtry*, **286 F.3d 1022, 1024 (7th Cir. 2002)**.

The IDOC grievance system is set forth in **20 Ill. Administrative Code §504.800** *et seq*. In summary, these regulations provide that the inmate shall first attempt to resolve problems or complaints with his counselor. If the problem is not resolved, the inmate must first submit his grievance to a grievance officer, who is to make his report in writing to the Chief Administrative Officer (*i.e*., the warden). Section 504.810 requires that the grievance be submitted "within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance." The warden notifies the inmate in writing of his decision. If the warden denies the grievance, the inmate has 30 days in which to file an appeal to the Administrative Review Board (ARB). Where, as in Illinois, the administrative system provides for an administrative appeal of the warden's decision, exhaustion requires that the prisoner file the appeal and give the appeal board

an opportunity to decide the appeal. *Pozo,* **286 F.3d at 1024.**

**1.    Defendant's Position**

The exhibits attached to **Doc. 18** establish that plaintiff filed a grievance on October 13, 2008, about his hair being cut. That grievance was denied by the warden on December 1, 2008. **Doc. 18, Ex. 2 & 3.** The affidavit of Gina Allen, a Chairperson for the ARB, is attached to **Doc. 18 as Ex. 4**. The affidavit states that Ms. Allen searched the records of the ARB at the request of the Attorney General's office, and that the ARB's records do not contain an appeal of the warden's denial of plaintiff's haircut grievance.

Ms. Allen notes that the ARB's records do contain a letter from Grayson, received in February, 2009, in which he referred to his hair being cut. She states that the letter was "not addressed" because it was not submitted on a grievance form and did not include the responses of the grievance officer or the warden. Ex. 4, ¶5.

**2.    Plaintiff's Position**

Plaintiff filed a response at **Doc. 25** in which he states that, after receiving the warden's denial of his grievance, he placed his appeal to the ARB in the mail in December, 2008. When he did not receive a response, he wrote a letter to the ARB enquiring about the status of his appeal in February, 2009. A copy of the February, 2009, letter is attached to defendant's reply, **Doc. 26, Ex. A**.

**3.    Evidentiary Hearing**

In *Pavey v. Conley*, **544 F.3d 739, 742 (7th Cir. 2008)**, the Seventh Circuit held that, where exhaustion is contested, the court must follow a three step process:

> (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether

4

(a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies

This Court held an evidentiary hearing pursuant to *Pavey* on July 19, 2010.

Defendant relied on the exhibits attached to **Docs. 18 & 26**, and offered no additional evidence.

Plaintiff testified that, after receiving the warden's denial, he looked for the address of the ARB, and found it on the grievance form. He put the grievance form, the denials, and a letter stating that he was appealing the denial of the grievance, into a pre-stamped envelope. He wrote the ARB's address on the envelope and put it in the mailbox for outgoing mail located in his unit. This occurred in December, 2008. Because he had not received a response by February, 2009, he wrote a letter to the ARB asking about the status of his appeal. He did not receive a response to that letter either.

**4.      Analysis**

Failure to exhaust is an affirmative defense on which defendants have the burden of proof. *Westefer v. Snyder*, **422 F.3d 570, 577 (7th Cir. 2005)**. "Because the prison employees bear the burden on exhaustion, they must do more than point to a lack of evidence in the record; rather they must "establish affirmatively" that the evidence is so one-sided that no reasonable factfinder could find that [plaintiff] was prevented from exhausting his administrative remedies." *Schaefer v. Bezy*, **2009 WL 1931187, \*3 (7th Cir. 2009)**.

The exhibits filed in support of the motion establish the following facts:

5

1. Grayson filed a grievance about his hair being cut, dated October 13, 2008. That grievance was denied by the warden on December 1, 2008. **Doc. 18, Ex. 2 & 3.**

2. Grayson wrote a letter to the ARB in February, 2009. In that letter, he stated "On December 17, 2008, I mailed a grievance about my hair being cut off against my religion." He further stated that he went through the administrative process at the institutional level before mailing his appeal to the ARB, and he had not received a response as of February 9, 2009. **Doc. 26, Ex. A**.

3. The records of the ARB do not contain an appeal of the denial of Grayson's haircut grievance. **Doc. 18, Ex. 4.**

It is clear that plaintiff did not exhaust administrative remedies as to his haircut grievance. However, he testified that he placed his appeal in a properly addressed and pre-stamped envelope, and mailed same to the ARB using the prison's mail system.

The Court finds that Grayson's testimony was credible. His demeanor and the detailed way in which he testified were indicative of truthfulness. The fact that he wrote the February, 2009, letter to the ARB inquiring about the status of his appeal is an indication that he did, in fact, mail the appeal to the ARB. His credibility is further bolstered by the fact that he stated in his original complaint that he mailed his appeal to the ARB in Springfield on December 17, 2008, but did not receive a response. **Doc. 1, p. 4**.

Having accepted plaintiff's testimony as credible, this Court concludes that Grayson's failure to exhaust was "innocent." ***Pavey*, 544 F.3d at 742.** This case is similar to ***Dole v. Chandler*, 438 F.3d 804 (7th Cir. 2006)**. There, the inmate put his grievance in the chuckhole for a guard to pick up and mail to the ARB, which was the correct procedure. The envelope was picked up by a guard, but it never made it to the ARB. The Seventh Circuit held that, where the inmate followed the correct procedures to submit his grievance, but it was not processed due to mistakes on the part of prison employees, the affirmative defense of failure to exhaust fails. ***Dole*, 438 F.3d at 811.** Here, plaintiff is unable to demonstrate exactly how his appeal went astray, and the Court does not suggest that prison employees interfered with it in any manner. However, the fact remains that Grayson did all he could do to perfect his appeal, but the ARB

6

has no record of having received his appeal.

There do not appear to be any further administrative remedies that the prison will permit Grayson to exhaust. *Pavey*, **544 F.3d at 742.** The ARB has ignored his inquiry about the status of his appeal. Therefore, this Court recommends that his grievance be deemed exhausted and the motion for summary judgment be denied as to the claim of failure to exhaust administrative remedies.

## Qualified Immunity

Defendant Schuler also argues that he is entitled to judgment based on qualified immunity because it is not clearly established that the facts alleged by plaintiff show a violation of his constitutional rights.

### 1. Applicable Law

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, **102 S.Ct. 2727, 2738 (1982)**.

*Saucier v. Katz*, **121 S. Ct. 2151 (2001)** required that a court follow a two-step process in analyzing a claim of qualified immunity. First, the court must determine whether the facts as alleged by plaintiff show a violation of a constitutional right. If so, the court must then determine whether the right was "clearly established" at the time of the defendant's actions. *Saucier*, **121 St. Ct. at 2156.** However, the Court is no longer bound to proceed in that manner. In *Pearson v. Callahan*, **129 S.Ct. 808, 818 (2009)**, the Supreme Court held that the *Saucier* sequence is no longer mandatory. Rather, a court may use its discretion in determining which of the two prongs of the test should be analyzed first.

### 2. Facts Alleged

Plaintiff alleges in his complaint that he is a member of the African Hebrew Israelite

7

faith, and that he has taken the Nazarite Vow of Separation, which requires him to allow his hair to grow long.  He states that, because of his African ancestry, his hair forms dreadlocks as it grows.  On August 27, 2008, he was sent to segregation for refusing to cut his hair for an updated identification picture.  Plaintiff was issued a disciplinary report for disobeying a direct order.  The DR is located at **Doc. 1, pp. 8-9.**  Plaintiff states that he explained to Lieutenant Schuler that he wore dreadlocks as part of his religion, but Schuler expressed "disinterest and a lack of concern."  Eventually, he was handcuffed, and his hair was cut off while he "was under duress."  Plaintiff denies that his hair posed a security risk and suggests that Schuler's interest in security could have been served in a less restrictive manner, such as by conducting a "hair search."  **Doc. 1, pp. 5-6.**

A copy of the Individual Grooming Policy Notice that was issued by Lieutenant Schuler to Grayson on August 27, 2008, is attached to **Doc. 18 as Ex. 1.**   The Notice states that, pursuant to Departmental Rule 502, the warden had determined that the inmate's "hairstyle presents a safety or security risk or sanitation problem."  The Notice further states that, if the inmate fails to bring his hairstyle into compliance with the grooming policy, a disciplinary report will be issued for disobeying a direct order.  Ex. 1 indicates that Grayson refused the first verbal order on August 27, 2008.  On August 29, 2008, with respect to a second verbal order, Lieutenant Schuler noted that Grayson "stated he will comply."  On September 2, 2008, Lieutenant Schuler noted that Grayson "voluntarily complied" and the facility barber cut his hair.

**3.**      **Analysis**

Here, is it appropriate to begin with the second prong of the *Saucier* analysis.

The authority for the IDOC grooming policy is provided by 20 Ill. Admin. Code §502.110(c), which states that "An individual who continuously changes his appearance and thereby interferes with the orderly function of the facility, or otherwise creates a security risk or a sanitation problem, may be required to abide by an individual grooming policy, at the

8

discretion of the Chief Administrative Officer."

Defendant argues that, in August, 2008, it had not been decided that cutting an inmate's hair pursuant to the IDOC's grooming policy violated the inmate's First Amendment rights. He is correct.

Although prisoners retain their First Amendment right to the free exercise of religion, the right is not unlimited; prison officials may enforce policies and regulations which limit the exercise of religious practices. "To ensure that courts afford appropriate deference to prison officials, we have determined that prison regulations alleged to infringe constitutional rights are judged under a "reasonableness" test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." ***O'Lone v. Estate of Shabazz*, 107 S.Ct. 2400, 2404 (1987)**.

In order for a right to be clearly established, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." ***Anderson v. Creighton*, 107 S. Ct. 3034, 3039 (1987)**. This does not mean that plaintiff must cite a case arising under the same or even materially similar facts; however, it must appear that, under the law as it existed at the time of his actions, defendant Schuler should have known that applying the IDOC grooming policy to Grayson would violate his First Amendment rights. ***Finsel v. Cruppenink*, 326 F.3d 903, 906 (7th Cir. 2003)**.

In 2008, a reasonable correctional officer would not have any reason to believe that the application of the IDOC's grooming policy would violate an inmate's First Amendment rights. On the contrary, in ***Reed v. Faulkner*, 842 F.2d 906 (7th Cir. 1988)**, the Seventh Circuit held that a similar policy followed in the Indiana Department of Corrections did not violate the inmate's First Amendment rights. Similar prison grooming policies have been upheld in other Circuits. See, e.g., ***Hamilton v. Shriro*, 74 F.3d 1545, 1554-1555 (8th Cir. 1996), and cases cited**

9

therein; *Hines v. South Carolina Department of Corrections*, 148 F.3d 353 (4th Cir. 1998). Also, analogous restrictions on the wearing of religious headgear had been upheld by the Seventh Circuit in *Young v. Lane*, 922 F.2d 370 (7th Cir. 1991).

The Court notes that, in his response to the motion for summary judgment, plaintiff for the first time cites RLUIPA. He did not mention RLUIPA in his complaint, and his claim was construed on preliminary review as being brought only under the First Amendment. **See, Doc. 8**. In any event, the result would be the same even if plaintiff had stated a claim under RLUIPA, 42 U.S.C. §2000cc-1. In *Williams v. Snyder*, **2010 WL 750105, \*3 (7th Cir, March 5, 2010),** the Seventh Circuit upheld the IDOC's grooming policy under the more restrictive "least restrictive means" test applicable under RLUIPA,.

Because it was not clearly established in August, 2008, that the application of the IDOC's grooming policy would violate Grayson's First Amendment rights, defendant Schuler is entitled to summary judgment on the grounds of qualified immunity.

## Recommendation

This Court recommends that defendant's Motion to Dismiss **(Doc. 14)** be **DENIED** as moot. This Court further recommends that defendant's Motion for Summary Judgment **(Doc. 17)** be **DENIED** on the grounds of failure to exhaust administrative remedies, but be **GRANTED** on the grounds of qualified immunity. Judgment should be entered in favor of defendant Schuler.

If this Report and Recommendation is adopted in its entirety, no claims will remain pending.

Objections to this Report and Recommendation must be filed on or before **August 6, 2010.**

**Submitted: July 20, 2010.**

                **s/ Clifford J. Proud**
                **CLIFFORD J. PROUD**
                **UNITED STATES MAGISTRATE JUDGE**